IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE MATERIAL WITNESSES : Case No. U. S. DISTRICT COURT - DE
ROBERTO DAMASING, PAUL TUDOR, : MISC. CASE # 06-122
PASCUAL CONGE AND :
BRYAN ESPINA. :

FILED 2006 JUN 27 PM 1:53 CLERK U.S. DISTRICT COURT DISTRICT OF DELAWARE

**BRIEF IN SUPPORT OF THE EMERGENCY PETITION OF
ROBERT DAMASING, PAUL TUDOR, PASCUAL CONGE
AND BRYAN ESPINA TO COMPEL THEIR IMMEDIATE RELEASE**

Richard M. Donaldson (DE Bar No. 4367)
Montgomery, McCracken, Walker & Rhoads, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE 19801
(302) 504-7840

*Counsel for Petitioners Roberto Damasing,
Paul Tudor, Pascual Conge and Bryan Espina*

Of Counsel:

Michael K. Twersky
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109
(215) 772-1500

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. STATEMENT OF FACTS .................................................................................. 2

III. LEGAL ARGUMENT .......................................................................................... 5

    A. THE GOVERNMENT'S ACTIONS IN DETAINING PETITIONERS CONSTITUTE A DEPRIVATION OF THEIR CONSTITUTIONAL RIGHTS. ............................................................................................................ 5

        1. Petitioners' Detentions Are *De Facto* Arrests Of Material Witnesses ........................................................................................... 6

        2. Petitioners Are Entitled To Constitutional Protections ........................... 7

    B. THE GOVERNMENT SHOULD BE COMPELLED TO RELEASE PETITIONERS OR TO DEPOSE THEM IMMEDIATELY PURSUANT TO FED. R. CRIM. P. 15, AND RELEASE THEM FORTHWITH THEREAFTER ........................................................................ 8

IV. CONCLUSION ................................................................................................... 11

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Aguilar-Ayala v. Ruiz*, 973 F.2d 411 (5th Cir. 1992) ............... 9, 10

*Chi v. Immigration & Naturalization Serv.*, 192 F.3d 390 (3d Cir. 1999) ............... 7

*Kaupp v. Texas*, 538 U.S. 626 (2003) ............... 6

*Stone v. Holzberger*, 807 F. Supp. 1325 (S.D. Oh. 1992) ............... 7

*United States v. Chen*, 214 F.R.D. 578 (N.D. Ca. 2003) ............... 9

*United States v. Ismaili*, 828 F.2d 153 (3d Cir. 1987) ............... 8

*United States v. Mendenhall*, 446 U.S. 544 (1980) ............... 6

*United States v. Nai*, 949 F. Supp. 42 (D. Mass. 1996) ............... 8

*United States v. Salerno*, 481 U.S. 739 (1987) ............... 5

*United States v. Sharif*, 343 F. Supp. 2d 610 (E.D. Mich. 2004) ............... 10

*United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982) ............... 10

**FEDERAL STATUTES**

18 U.S.C. § 3142 ............... 8

18 U.S.C. § 3144 ............... 6, 8, 9

**FEDERAL RULES**

Federal Rule of Criminal Procedure 15 ............... 1, 2, 3, 4, 8, 9

## I.    <u>INTRODUCTION</u>

For the past six months, Petitioners, none of whom are United States citizens, have been held as *de facto* prisoners by the United States government in connection with a Coast Guard investigation relating to the dumping overboard of oily water on the M/V IRENE E.M. ("IRENE" or the "Ship"), where each worked as a crewmember.

Petitioners' Ship was detained by the United States Coast Guard on or about December 9, 2005. In order to permit the Ship and part of its crew to debark, the United States required that the owner and operator of the Ship enter into a Security Agreement by which they agreed to post a bond and to house, feed and continue to pay the salaries for Petitioners and other crew members identified by the government, as well as to make those crew members available to the United States for its investigation. That Security Agreement expires in less than three weeks.

Petitioners are neither targets nor subjects of the investigation, and there are no allegations that they engaged in criminal activity. In fact, each has been granted immunity by the United States in exchange for their cooperation in the government's investigation, which cooperation they have provided fully and completely. Thus, Petitioners have been forced to remain here solely in their capacity as witnesses.

Petitioners have advised the United States repeatedly over the past several months that they desire to return to their respective homelands. The government, however, has refused that request, and refuses to return their passports or consent to depose Petitioners pursuant to Federal Rule of Criminal Procedure 15(a)(2). Instead, the government keeps advising Petitioners that the matter will be resolved "soon," although it refuses to indict anyone or allow depositions to proceed.

Petitioners have been interviewed by government representatives on several occasions and they have provided testimony before a grand jury investigating the discharge of oily water on the IRENE. There is nothing more that Petitioners can provide to the government, yet still they are not permitted to leave the United States.

Petitioners ask simply for their freedom – to be able to return to their families, who they have not seen for months (and in the case of Petitioner Damasing, for more than 18 months). The Security Agreement will expire on July 15, 2006, after which Petitioners will no longer be paid or housed by the Company. This means that they will not be able to support their families and may wind up housed by the United States in a correctional facility.

Accordingly, Petitioners ask this Court either to direct their immediate release or to direct the United States to promptly take their depositions under Federal Rule of Criminal Procedure 15. Had Petitioners been arrested under a material witness warrant, the United States would have distinct obligations to them, including the taking of their depositions. The Security Agreement does not obviate those obligations. By forcing the owner and operator to detain Petitioners in order to secure the release of their Ship, the United States cannot avoid its obligations to the witnesses whom they have directed be retained. But for the requirement of the United States to maintain Petitioners here, and its control over them, Petitioners would have been home to their families long ago.

## II.  STATEMENT OF FACTS

Petitioners are citizens of foreign countries who were all members of the crew of the IRENE:

- Roberto Damasing, 32 years old, was an oiler on the IRENE. Exhibit A, Decl. of Roberto Damasing. He is a citizen of the Republic of the Philippines. *Id.* He provides the sole financial support for his wife and two brothers. *Id.* He has been away from his family since he boarded the IRENE in December, 2004. *Id.*

- Paul Tudor, 46 years old, was an electrician on the IRENE. Exhibit B, Decl. of Paul Tudor. He is a Romanian citizen who provides the sole financial support for his wife and two sons. *Id.* He has been away from his family since he boarded the IRENE in May, 2005. *Id.*

- Pascual Conge, 39 years old, was the third assistant engineer on the IRENE. Exhibit C, Decl. of Pascual Conge. He is a citizen of the Republic of the Philippines. *Id.* He provides the sole financial support for his wife, children, parents and sister. *Id.* He has been away from his family since he boarded the IRENE in October, 2005. *Id.*

- Bryan Espina, 29 years old, was the fourth assistant engineer on the IRENE. Exhibit D, Decl. of Bryan Espina. He is a citizen of the Republic of the Philippines. *Id.* He provides the sole financial support for his wife, daughter and parents. *Id.* He has been away from his family since he boarded the IRENE in November, 2005. *Id.*

On or about December 9, 2005, the United States Coast Guard boarded the IRENE while it was in port in Delaware and allegedly learned that the Ship had been illegally discharging oily water through a so-called "magic pipe," which was said to be used to pump oily water directly overboard when the Ship was at open sea.

As a result of this discovery, the Ship was detained. In order to release the Ship, its owner and operator were required to post a bond and agree to leave behind several crew members, including Petitioners, for purposes of the government's investigation. Exhibit E, Agreement on Security (the "Security Agreement"). The Security Agreement also required the owner and operator to continue to pay Petitioner's salaries, house them and provide for their meals. *Id.* at ¶ 5. None of the Petitioners were parties to the Security Agreement nor were they consulted about it.

The original Security Agreement was to expire on April 15, 2006. *Id.* at ¶ 5. The Security Agreement has been amended on three occasions. Exhibit F, Amendment 1 to Agreement on Security; Exhibit G, Amendment 2 to Agreement on Security; Exhibit H,

Amendment 3 to Agreement on Security. Presently, the Security Agreement will expire on July 15, 2006. Exhibit H, Amendment 3 to Agreement on Security.

On or about January 2, 2006, Petitioners and several of their crewmates were taken from the Ship and their passports were seized. *See* Declarations at Exhibits A-D. Pursuant to the Security Agreement, they were placed two-to-a room at America's Best Inn, a motel located near the stadiums in Philadelphia, Pennsylvania. *Id.* Petitioners have remained at that motel for more than six months. *Id.*

Petitioners have not been permitted to leave the United States; indeed, the government has refused to return their passports. They are living in a city with which they are not familiar, forced to eat local food that is not part of their normal diet, and they may not visit their families or homeland. They must remain available to the government at all times. Exhibit E, Security Agreement ¶¶ 4-5. In essence, they have been under house arrest for six months, although they have committed no crime.

Following their seizure and initial detention by the government, Petitioners were questioned by the United States Attorney's Office under a proffer agreement. They also testified before a grand jury, the last date of such testimony being February 16, 2006. They have languished at the America's Best Inn since that time and, with the exception of single meeting on May 9, 2006, have not met with the government for its investigation.[1]

The government has advised Petitioners that they are neither subjects nor targets of its investigation and they have not been accused of any criminal activity. Exhibit I, January 11, 2006 letter signed by Edmond Falgowski. In fact, each of the Petitioners was granted immunity

---

[1] All of the questions posed to Petitioners at the May 9, 2006 meeting had been asked on prior occasions. The meeting was nothing more than an opportunity for the government to confirm the information it had already been provided by Petitioners.

and agreed to cooperate with the government's investigation. *Id.* They have done just that on each and every occasion in which the government has asked them questions about the alleged discharge of oily water on the IRENE.

After the expiration of the Security Agreement on July 15, 2006 – just two-and-a-half weeks from today – Petitioners will no longer receive their salaries, food allowance or be housed by the IRENE's owner and operator. Consequently, they will not be sending any funds home to support their families and they will have nowhere to stay. The government has offered no alternatives to Petitioners. Indeed, the only alternative to their food and housing problems is a federal correctional facility. There is no alternative to make up for the lost salaries. The government also has not been able to provide any information as to when Petitioners will be free to go home. In short, the government can provide no answers about their future or the future of their families, whose welfare is solely dependent on Petitioners. *See* Declarations at Exhibits A-D.

With the exception of the government, all of the other parties to this investigation have agreed to depose Petitioners pursuant to the Federal Rules of Criminal Procedure, including the owner and operator of the IRENE, as well as the IRENE's captain and chief engineer, all of whom may very well be targets of the government's investigation.

III. **LEGAL ARGUMENT**

    A. **THE GOVERNMENT'S ACTIONS IN DETAINING PETITIONERS CONSTITUTE A DEPRIVATION OF THEIR CONSTITUTIONAL RIGHTS.**

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S. Ct. 2095, 95 L.Ed. 2d 697 (1987). Petitioners have been detained by the government at a Philadelphia motel for more than six months while they have provided information and testimony before a grand

jury regarding the oil-disposal activities of the IRENE. They have been separated from their families by thousands of miles and have been held against their will. This type of long-term detention is not the norm, and this is not the type of situation that is the exception to the norm contemplated by the Supreme Court.

Despite the lack of an arrest warrant, Petitioners are, in essence, under house arrest. The Security Agreement does not change the fact that the United States government has seized Petitioners and are depriving them of their rights to liberty and process.

### 1.   Petitioners' Detentions Are *De Facto* Arrests Of Material Witnesses.

Title 18 U.S.C. § 3144 authorizes the arrest of a material witness, "[i]f it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by a subpoena...." Although the government has issued no affidavit and has requested no arrest warrant, it has held Petitioners for more than six months.

A person is seized, "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). *See also Kaupp v. Texas*, 538 U.S. 626, 629 (2003). Here, there is no doubt that Petitioners have been seized – they are, in no uncertain terms, not free to leave. Indeed, the government has refused to return their passports for that purpose.

The government has made clear that Petitioners are being held to provide a few pieces of material evidence in a possible criminal trial against the owner, operator, captain and chief engineer of the IRENE. Thus, they are actually being held as material witnesses, effectuated through the Security Agreement the government imposed on Petitioners' employer, which requires them to essentially hold Petitioners at the government's direction.

The government cannot skirt due process requirements simply because it has entered into an agreement with the IRENE's owner and operator for Petitioners' detention. To the contrary, their constitutional rights may not be bargained away without their input by virtue of the Security Agreement by and between the owner, operator and United States government, particularly an agreement that was forced upon the owner and operator in order to allow the Ship to debark. Petitioners were not parties to the Security Agreement; nor were they consulted about it in any respect. Declarations at Exhibit A-D.

For all of these reasons, Petitioners are entitled to the applicable constitutional protections afforded an arrested material witness.

### 2. Petitioners Are Entitled To Constitutional Protections

Although not United States citizens, Petitioners are currently residing in this country solely at the behest of the United States government, and as such, they are entitled to constitutional protections. *See Chi v. Immigration & Naturalization Serv.*, 192 F.3d 390, 396 (3d Cir. 1999) ("Even an excludable alien is a 'person' for purposes of the Fifth Amendment and is thus entitled to substantive due process"). The government has required that Petitioners be housed and made available at its discretion. Thus, Petitioners are the equivalent of material witnesses under house arrest. As such, they are entitled to due process.

Moreover, it is axiomatic that "a person arrested as a material witness is entitled to, at the very least, the same Fourth Amendment protections afforded to a person arrested on suspicion of criminal conduct." *Stone v. Holzberger*, 807 F. Supp. 1325, 1339 (S.D. Oh. 1992), *aff'd*, 23 F.3d 408 (1994). Petitioners are not charged with a crime; nor are they suspected of committing a crime – in fact, the government has provided them with full immunity. Exhibit I, January 11, 2006 letter signed by Edmond Falgowski. Yet, they are being treated with lesser constitutional regard than a criminal suspect.

In fact, Petitioners are being treated at a lesser standard than a material witness who refuses to cooperate. "If a material witness refuses to be deposed and it is impracticable to secure the appearance of that witness by subpoena, or if deposition testimony would not serve as an adequate alternative to the witness's live testimony, than the court must consider the issue of detention in accordance with 18 U.S.C. § 3142." *United States v. Nai*, 949 F. Supp. 42, 44 (D. Mass. 1996) (permitting detention of material witnesses where witnesses refused to be deposed). Title 18 U.S.C. § 1342 governs the release and detention of criminal defendants pending trial. Pursuant to that section, a defendant is entitled to presentation before a judicial officer who shall issue an order authorizing that defendant's release or detention. 18 U.S.C. § 1342(a). "Under the Act, as it applies to material witnesses, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that 'no condition or combination of conditions [set forth under 18 U.S.C. § 1342(b) or (c)] will reasonably assure the appearance of the person as required...' 18 U.S.C. § 3142(e)." *Nai*, 949 F. Supp. at 44. Petitioners have been afforded no such process, and have therefore been deprived of their Fourth Amendment rights.

  **B.** **THE GOVERNMENT SHOULD BE COMPELLED TO RELEASE PETITIONERS OR TO DEPOSE THEM IMMEDIATELY PURSUANT TO FED. R. CRIM. P. 15, AND RELEASE THEM FORTHWITH THEREAFTER.**

It is within the sound discretion of a trial judge to grant or deny a motion to depose a witness in a criminal matter. *United States v. Ismaili*, 828 F.2d 153, 159 (3d Cir. 1987), *cert. denied*, 485 U.S. 935, 108 S. Ct. 1110, 99 L.Ed. 2d 271 (1988). Federal Rule of Criminal Procedure 15(a)(2) and 18 U.S.C. § 3144 expressly contemplate permitting such depositions and subsequent release, where requested by a witness.

The United States, however, is the only party to this investigation that refuses to agree to depose Petitioners and allow them to go home. The owner, operator, captain and chief engineer of the IRENE, all of whom may be exposed to criminal and other penalties, will agree to depose Petitioners pursuant to Federal Rule of Criminal Procedure 15. Only the government insists on detaining Petitioners further – keeping them from their families, homes and employment.

Pursuant to Fed. R. Crim. P. 15(a)(2), "[a] witness who is detained under 18 U.S.C. § 3144 may request to be deposed by filing a written motion and giving notice to the parties. The court may then order that the deposition be taken and may discharge the witness after the witness has signed under oath the deposition transcript." Moreover,

> [n]o material witness maybe detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.

18 U.S.C. § 3144.

Here, Petitioners have virtually no burden in advocating that they should be deposed, other than to demonstrate that their testimony can be adequately secured by deposition and that "'further detention is not necessary to prevent a failure of justice.'" *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 413 (5th Cir. 1992) (quoting in part 18 U.S.C. § 3144) (holding that upon such a showing, "the district court must order [the witness'] deposition and prompt release"). A material witness who is not a party, but who advocates a deposition, need not demonstrate "exceptional circumstances." *United States v. Chen*, 214 F.R.D. 578, 579 (N.D. Ca. 2003).

Even so, here "exceptional circumstances" dictate that Petitioners be deposed and released. They have been isolated from their family, country and customs for more than six months. Further, on July 15, 2006, when the Security Agreement expires, they face the very real

possibility of being placed in federal custody and losing their paychecks – the latter of which threatens the safety and security of their families back home.

Moreover, no party will in any way be prejudiced by Petitioners being deposed and released. In fact, all prospective defendants in this matter – the owner, operator, captain and chief engineer of the IRENE – consent to Petitioners' depositions and release. Thus, any concern regarding the confrontation clause is moot, and detention is not necessary to prevent a failure of justice. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982); *United States v. Sharif*, 343 F. Supp. 2d 610, 616-17 (E.D. Mich. 2004). *See also Aguilar-Ayala*, 973 F.2d at 419 ("It would be the rare case, indeed, in which the government could establish the inadequacy of the deposition procedure and hence the potentiality of a 'failure of justice.'").

Given Petitioners' half-year stay here, and the possibility that in less than three weeks they will lose their pay, housing and food subsidy, Petitioners believe it is in the interest of justice that they be freed.

## IV.     CONCLUSION

For the foregoing reasons, Petitioners respectfully requests that the United States be compelled either to release them immediately or to take their depositions pursuant to Fed. R. Crim. P. 15(a)(2) by no later than July 10, 2006, release them immediately thereafter, provide them with their passports and documentation necessary for travel, and provide them with a letter for their respective homeland immigration authorities explaining that their detention in the United States was not the result of any criminal conduct on their part.

Respectfully submitted,

Dated: June 27, 2006

_____
Richard M. Donaldson (DE Bar No. 4367)
Montgomery, McCracken, Walker & Rhoads, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE  19801
(302) 504-7840

*Counsel for Petitioners Roberto Damasing,
Paul Tudor, Pascual Conge and Bryan Espina*

Of Counsel:

Michael K. Twersky
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109
(215) 772-1500

## CERTIFICATE OF SERVICE

I hereby certify that, on June 27, 2006, I arranged for a copy of the foregoing Brief In Support of Emergency Petition of Robert Damasing, Paul Tudor, Pascual Conge and Bryan Espina to Compel Their Immediate Release to be served by facsimile and first-class United States mail, postage prepaid upon the following individuals:

Mark Kotila, Esquire
United States Department of Justice
Environmental Crimes Section
P.O. Box 23985
L'Enfant Plaza Station
Washington, D.C. 20026-3985

Michael Chalos, Esquire
Fowler, Rodriguez & Chalos
366 Main Street
Port Washington, NY 11050

Carl Woodward, Esquire
Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein,
Five Becker Farm Road
Roseland, New Jersey 07068-1739

Bruce Pasfield, Esquire
Alston & Bird LLP
The Atlantic Building
950 F Street, N.W.
Washington, DC 20004-1404

Richard M. Donaldson