FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

2006 JUN 27  PM 1: 53

|                                      |     |           |
|--------------------------------------|-----|-----------|
| IN RE MATERIAL WITNESSES             |  :  | Case No.  |
| ROBERTO DAMASING, PAUL TUDOR,        |  :  |           |
| PASCUAL CONGE AND                    |  :  |           |
| BRYAN ESPINA.                        |  :  |           |

U. S. DISTRICT COURT - DE

MISC. CASE #____06 - 12 2

**TRANSMITTAL AFFIDAVIT OF RICHARD M. DONALDSON**
**IN SUPPORT OF EMERGENCY PETITION OF**
**ROBERT DAMASING, PAUL TUDOR, PASCUAL CONGE**
**AND BRYAN ESPINA TO COMPEL THEIR IMMEDIATE RELEASE**

Richard M. Donaldson, having been duly sworn, deposes and says as follows:

1.     I am a partner in the law firm of Montgomery, McCracken, Walker & Rhoads, LLP, 300 Delaware Ave., Suite 750, Wilmington, Delaware 19801, and am counsel for Petitioners Roberto Damasing, Paul Tudor, Pascual Conge and Bryan Espina ("Petitioners") in the above-captioned action.  I am over twenty-one years of age and have personal knowledge of the facts stated in this Affidavit.  If sworn as a witness, I could testify competently to those facts.

2.     Attached hereto at Exhibit A is a true and correct copy of the Declaration of Roberto Damasing, dated June 26, 2006.

3.     Attached hereto at Exhibit B is a true and correct copy of the Declaration of Paul Tudor, dated June 26, 2006.

4.     Attached hereto at Exhibit C is a true and correct copy of the Declaration of Pascual Conge, dated June 26, 2006.

5.     Attached hereto at Exhibit D is a true and correct copy of the Declaration of Bryan Espina, dated June 26, 2006.

6.     Attached hereto at Exhibit E is a true and correct copy of the Security Agreement, dated December 27, 2005.

7.    Attached hereto at Exhibit F is a true and correct copy of Amendment 1 to the Security Agreement, dated April 7, 2006.

8.    Attached hereto at Exhibit G is a true and correct copy of Amendment 2 to the Security Agreement, dated May 10, 2006.

9.    Attached hereto at Exhibit H is a true and correct copy of Amendment 3 to the Security Agreement, dated June 15, 2006.

10.    Attached hereto at Exhibit I is a true and correct copy of the letter from Edmond Falgowski to Michael Twersky, dated January 11, 2006.

11.    I hereby affirm under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Richard M. Donaldson

Sworn and subscribed before me
this 27th day of June 2006

_____
Notary Public

SUSAN A. ALLEN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires June 14, 2008

2

# EXHIBIT A

## DECLARATION OF ROBERTO DAMASING

I, ROBERTO DAMASING, in support of my Declaration, states as follows:

1.    I am a citizen of the Republic of the Philipines.

2.    I was born on September 17, 1973.  I am married and am the sole support for my wife and two brothers.

3.    On December 12, 2004 I boarded the M/V IRENE E.M. in China as an oiler.

4.    My contract with the shipping company was supposed to last only until December, 2005.

5.    On or about December 9, 2005, the M/V IRENE E.M. was boarded by the United States Coast Guard while it was in port in the State of Delaware, United States of America.

6.    On or about December 9, 2005, I was interviewed by the United States Coast Guard about the dumping of oily water overboard.

7.    I was told that the M/V IRENE E.M. was not permitted to leave the United States because the United States Coast Guard was investigating the illegal dumping of oily water.

8.    On or about January 2, 2006, I and other crewmen were taken off the ship and were put in the America's Best Inn in Philadelphia, Pennsylvania.  At that time, my passport was taken from me and it has not been returned.

9.    I understand that I am being held at the America's Best Inn because of an agreement between the Owner of the M/V IRENE E.M., Venetico Marine S.A., the operator of the M/V IRENE E.M., Chian Spirit Maritime, and the United States government.  I am not a party to that agreement nor was I consulted about that agreement.

10.    Shortly after being taken from the ship, the company appointed a lawyer to represent me.

11.     I was interviewed by the United States government on several occasions, with my lawyer, and have appeared before a grand jury. I have answered all of the questions posed to me truthfully and fully.

12.     For the past six months I have been held at America's Best Inn in Philadelphia, Pennsylvania. I have been away from my homeland and family since I boarded the M/V IRENE E.M. I have not seen my family or country in 18 months.

13.     I have advised the United States government, through my attorney, that I wish to return home.

14.     On May 9, 2006, my lawyer and I met with representatives of the United States government in Delaware and we again advised them of my desire to return home. I was told that the matter would be resolved soon. More than a month later, I am still not free to leave.

15.     I have told the prosecutor and the grand jury everything that I know about dumping of oily water overboard. I am just a witness in this case, I have not been accused of any crime and I have been told by the prosecutor that I will not be accused of any crime based on what happened aboard the M/V IRENE E.M.

16.     My attorney has advised that me that my deposition could be taken and that I could then return home. He also has advised me that the owner and operator of the M/V IRENE E.M. have agreed to have my deposition taken, as have the lawyers for the chief engineer and the captain of the ship. Only the United States government refuses to take my deposition and allow me to return home to my family.

17.     I have done nothing wrong. The United States government gave me a letter stating that as long as I cooperate I will not be charged with a crime. I have done just that, but still the government will not return my passport and allow me to leave the United States.

I declare that under penalties of perjury that the foregoing statements are true to the best of my knowledge, information and belief.


Dated:  June 26, 2006

_____
Roberto Damasing

# EXHIBIT B

## DECLARATION OF PAUL TUDOR

I, PAUL TUDOR, in support of my Declaration, states as follows:

1.    I am a citizen of Medgidia, Constantza, Romania.

2.    I was born on December 27, 1960.  I am married and have two sons in Romania.

3.    I am the sole support for my family.

4.    On May 24, 2005, I boarded the M/V IRENE E.M. in Poland as the ship's electrician.

5.    On or about December 9, 2005, the M/V IRENE E.M. was boarded by the United States Coast Guard while it was in port in the State of Delaware, United States of America.

6.    On or about December 9, 2005, I was interviewed by the United States Coast Guard concerning the operation of the ship's oil water separator ("OWS").

7.    I was told that the M/V IRENE E.M. was not permitted to leave the United States because the United States Coast Guard was investigating the illegal discharge of oily water.

8.    On or about January 2, 2006, I and other crewmen were taken off the ship and were put in the America's Best Inn in Philadelphia, Pennsylvania.  At that time, my passport was taken from me and it has not been returned.

9.    I understand that I am being held at the America's Best Inn because of an agreement between the Owner of the M/V IRENE E.M., Venetico Marine S.A., the operator of the M/V IRENE E.M., Chian Spirit Maritime, and the United States government.  I am not a party to that agreement nor was I consulted about that agreement.

10.    Shortly after being taken from the ship, the company appointed a lawyer to represent me.

11.    I was interviewed by the United States government on several occasions, with my lawyer, and have appeared before a grand jury. I have answered all of the questions posed to me truthfully and fully.

12.    For the past six months I have been held at America's Best Inn in Philadelphia against my wishes. I have been away from my homeland and family since I boarded the M/V IRENE E.M. in May, 2005.

13.    I have advised the United States government, through my attorney, that I wish to return home.

14.    On May 9, 2006, my lawyer and I met with representatives of the United States government in Delaware and we again advised them of my desire to return home. I was told that the matter would be resolved soon. More than a month later, I am still not free to leave.

15.    I have told the prosecutor and the grand jury everything that I know regarding the OWS. I am just a witness in this case, I have not been accused of any crime and I have been told by the prosecutor that I will not be accused of any crime based on what happened aboard the M/V IRENE E.M.

16.    I am being held in the United States against my will and am like a prisoner at the motel where I am staying.

17.    My attorney has advised that me that my deposition could be taken and that I could then return home. He also has advised me that the owner and operator of the M/V IRENE E.M. have agreed to have my deposition taken, as have the lawyers for the chief engineer and the captain of the ship. Only the United States government refuses to take my deposition and allow me to return home to my family.

-2-

18.    I have done nothing wrong.  The United States government gave me a letter stating that as long as I cooperate I will not be charged with a crime.  I have done just that, but still the government will not return my passport and allow me to leave the United States.

I declare that under penalties of perjury that the foregoing statements are true to the best of my knowledge, information and belief.

Dated: June 26, 2006

_____
Paul Tudor

-3-

# EXHIBIT C

## DECLARATION OF PASCUAL CONGE

I, PASCUAL CONGE, in support of my Declaration, states as follows:

1.    I am a citizen of the Republic of the Philipines.

2.    I was born on May 25, 1967.  I am married with two children.

3.    I am the sole support for my wife, children, parents and sister.

4.    On October 28, 2005, I boarded the M/V IRENE E.M. in Ghana as the third assistant engineer.

5.    On or about December 9, 2005, the M/V IRENE E.M. was boarded by the United States Coast Guard while it was in port in the State of Delaware, United States of America.

6.    On or about December 9, 2005, I was interviewed by the United States Coast Guard about the dumping of oily water overboard.

7.    I was told that the M/V IRENE E.M. was not permitted to leave the United States because the United States Coast Guard was investigating the illegal dumping of oily water.

8.    On or about January 2, 2006, I and other crewmen were taken off the ship and were put in the America's Best Inn in Philadelphia, Pennsylvania.  At that time, my passport was taken from me and it has not been returned.

9.    I understand that I am being held at the America's Best Inn because of an agreement between the Owner of the M/V IRENE E.M., Venetico Marine S.A., the operator of the M/V IRENE E.M., Chian Spirit Maritime, and the United States government.  I am not a party to that agreement nor was I consulted about that agreement.

10.    Shortly after being taken from the ship, the company appointed a lawyer to represent me.

2088422v1

11.    I was interviewed by the United States government on several occasions, with my lawyer, and have appeared before a grand jury. I have answered all of the questions posed to me truthfully and fully.

12.    For the past six months I have been held at America's Best Inn in Philadelphia against my wishes. I have been away from my homeland and family since I boarded the M/V IRENE E.M. in October, 2005.

13.    I have advised the United States government, through my attorney, that I wish to return home.

14.    On May 9, 2006, my lawyer and I met with representatives of the United States government in Delaware and we again advised them of my desire to return home. I was told that the matter would be resolved soon. More than a month later, I am still not free to leave.

15.    I have told the prosecutor and the grand jury everything that I know about dumping of oily water overboard. I am just a witness in this case, I have not been accused of any crime and I have been told by the prosecutor that I will not be accused of any crime based on what happened aboard the M/V IRENE E.M.

16.    My attorney has advised that me that my deposition could be taken and that I could then return home. He also has advised me that the owner and operator of the M/V IRENE E.M. have agreed to have my deposition taken, as have the lawyers for the chief engineer and the captain of the ship. Only the United States government refuses to take my deposition and allow me to return home to my family.

17.    I have done nothing wrong. The United States government gave me a letter stating that as long as I cooperate I will not be charged with a crime. I have done just that, but still the government will not return my passport and allow me to leave the United States.

-2-

I declare that under penalties of perjury that the foregoing statements are true to the best of my knowledge, information and belief.


Dated:  June 26, 2006

Pascual Conge

-3-

# EXHIBIT D

## DECLARATION OF BRYAN ESPINA

I, BRYAN ESPINA, in support of my Declaration, states as follows:

1.    I am a citizen of the Republic of the Philipines.

2.    I was born on August 23, 1975. I am married and have one child.

3.    I am the sole support for my wife, daughter and parents.

4.    On November 17, 2005, I boarded the M/V IRENE E.M. in Brazil as the fourth assistant engineer.

5.    On or about December 9, 2005, the M/V IRENE E.M. was boarded by the United States Coast Guard while it was in port in the State of Delaware, United States of America.

6.    On or about December 9, 2005, I was interviewed by the United States Coast Guard about the dumping of oily water overboard.

7.    I was told that the M/V IRENE E.M. was not permitted to leave the United States because the United States Coast Guard was investigating the illegal dumping of oily water.

8.    On or about January 2, 2006, I and other crewmen were taken off the ship and were put in the America's Best Inn in Philadelphia, Pennsylvania. At that time, my passport was taken from me and it has not been returned.

9.    I understand that I am being held at the America's Best Inn because of an agreement between the Owner of the M/V IRENE E.M., Venetico Marine S.A., the operator of the M/V IRENE E.M., Chian Spirit Maritime, and the United States government. I am not a party to that agreement nor was I consulted about that agreement.

10.    Shortly after being taken from the ship, the company appointed a lawyer to represent me.

11.     I was interviewed by the United States government on several occasions, with my lawyer, and have appeared before a grand jury. I have answered all of the questions posed to me truthfully and fully.

12.     For the past six months I have been held at America's Best Inn in Philadelphia, Pennsylvania. I have been away from my homeland and family since I boarded the M/V IRENE E.M. in November, 2005.

13.     I have advised the United States government, through my attorney, that I wish to return home.

14.     On May 9, 2006, my lawyer and I met with representatives of the United States government in Delaware and we again advised them of my desire to return home. I was told that the matter would be resolved soon. More than a month later, I am still not free to leave.

15.     I have told the prosecutor and the grand jury everything that I know about dumping of oily water overboard. I am just a witness in this case, I have not been accused of any crime and I have been told by the prosecutor that I will not be accused of any crime based on what happened aboard the M/V IRENE E.M.

16.     My attorney has advised that me that my deposition could be taken and that I could then return home. He also has advised me that the owner and operator of the M/V IRENE E.M. have agreed to have my deposition taken, as have the lawyers for the chief engineer and the captain of the ship. Only the United States government refuses to take my deposition and allow me to return home to my family.

17.     I have done nothing wrong. The United States government gave me a letter stating that as long as I cooperate I will not be charged with a crime. I have done just that, but still the government will not return my passport and allow me to leave the United States.

-2-

I declare that under penalties of perjury that the foregoing statements are true to the best of my knowledge, information and belief.

Dated:  June 26, 2006

Bryan Espina

# EXHIBIT E

# AGREEMENT ON SECURITY

## RECITALS

A.      VENETICO MARINE S.A., with its' registered office at 80 Broad Street, Monrovia, Liberia, ("Owner"), was at all relevant times the registered owner of the **M/V IRENE E. M.** ("the Vessel").

B.      CHIAN SPIRIT MARITIME Enterprises, Inc., a company incorporated under the laws of the Republic of Liberia, with a principal place of business at 10 Antoniou Ampatielou & Saktouri Streets, Piraeus, Greece, was at all relevant times the Operator ("Operator") of the **M/V IRENE E. M.**

C.      The United States of America ("United States") asserts that the Vessel is subject to the MARPOL Protocol and 33 USC Chapter 33; that the Vessel violated the MARPOL Protocol; the Act to Prevent Pollution from Ships (APPS), 33 USC §1901 *et seq.*; 18 USC § 3571; and that a District Court may assess criminal penalties against the Vessel *in rem* or its Owner or Operator *in personam* under 33 CFR §151.

D.      The United States, pursuant to the Captain of the Port letter dated December 13, 2005, is withholding the Vessel's U.S. Customs departure clearance until the Vessel provides security as authorized by 33 USC § 1908(e).

E.      The Owner and Operator, and the United States, as parties to this Agreement, desire to arrange for security to be posted to secure the performance of this Agreement and to permit the Bureau of Customs and Border Protection to issue the Vessel's departure clearance.

## AGREEMENT

The undersigned parties agree as follows:

1

1.  Owner and Operator shall arrange to post a Surety Bond with Traveler's Casualty and Surety Company of America in the total amount of Five-hundred Thousand United States Dollars ($ 500,000 USD) as security for any adjudicated potential fines or penalties for the offenses mentioned above, prior to the Vessel's sailing from the Port of Philadelphia. When the Surety Bond of $500,000 has been received by the U.S. Coast Guard, to the attention of Lieutenant Kristian Pickrell, Commander Fifth Coast Guard District, 431 Crawford Street, Portsmouth, Virginia, 23704, the Vessel shall be permitted to depart forthwith for the remainder of its voyage.

2.  Owner and Operator authorize Attorneys to accept service of any correspondence or legal papers related to these Alleged Violations on behalf of the Vessel, Owner and Operator. The Owner and Operator agree to enter an appearance in any criminal action brought against them in the U.S. District Court for the District of Delaware concerning the Alleged Violations, or in any civil penalty action brought against them in any other forum, and to defend the Vessel from any *in rem* action asserted against it.

3.  This Agreement is to be binding whether the Vessel be in port or not in port, lost or not lost, and regardless of its condition, and is given without prejudice as to all rights or defenses which the Vessel Owner and/or Operator may have, none of which is to be regarded as waived, except the Owner and Operator agree to waive any objections to *in personam* jurisdiction over them, and *in rem* jurisdiction over the Vessel, with respect to the potential claims of the United States described above.

4.  Owner and Operator agree to facilitate interviews of any officer or crewmember employed by or on behalf of the Owner and/or Operator. Owner and Operator agree to work with the United States to arrange for testimony of officers and crewmembers before

2

a Grand Jury or any other judicial or administrative proceeding arising from alleged violations. Owner and Operator agree to assist the United States in effecting proper service of process related to the Alleged Violations, to include accepting service of any Grand Jury and/or trial or deposition subpoenas for those officers or crewmembers currently employed by the Owner and Operator who are not in the United States at the time the subpoena is issued. In addition, the Owner and Operator will encourage these officers and crewmembers to cooperate with the United States in carrying out its investigation and to appear for their scheduled testimony. Owner and Operator will not act in bad faith in carrying out these obligations. The United States agrees that it will provide reasonable notice of its need for these officers and crewmembers to be present so that Owner and Operator may arrange for substitute officers and crew. No disciplinary measures or legal proceedings or any other actions whatsoever will be instituted by the Owner and Operator or any agent of the Owner and Operator of the Vessel against any crewmember or officer in connection with the crewmembers' or officers' cooperation with the United States Government and the Owner and Operator will undertake all reasonable efforts to prevent any third party from instituting any proceeding or taking any action against any crewmember or officer.

5. Owner and Operator agree to continue the employment, paying total wages of Second Officer Gilbert Amaguin, Oiler Felix Bersamina, Third Assistant Engineer Pascual Conge, Oiler Roberto Damasing, Chief Engineer Adrian Dragomir, Fourth Assistant Engineer Brian Espina, Fitter Nicole Ghiocel, Master Grigore Manolache, Wiper Mario Manzanillo, Oiler Edgaro Paje, Electrician Paul Tudor, and Second Assistant Engineer Edgar Villano. Additionally, Owner and Operator agree to continue

3

the employment, paying total wages, of those officers and crewmembers who may be served with federal Grand Jury, Rule 15 deposition, and/or trial subpoenas ("subpoenaed officers and crewmembers"). In addition, the Owner and Operator agree to provide lodging and meals to the aforementioned officers and crewmembers and subpoenaed officers and crewmembers while in the United States at the Owner's and Operator's expense up until April 15, 2006 or until notified by the Assistant United States Attorney responsible for any pending criminal investigation that their testimony is no longer needed, whichever is sooner. The Owner and Operator and their Attorney agree to immediately notify the Assistant United States Attorney responsible for the pending criminal investigation of the name, address and telephone number of hotel(s) where the aforementioned officers and crewmembers or subpoenaed officers and crewmembers are lodged. Further, after being advised that the aforementioned or subpoenaed officers and crewmembers' presence is no longer needed, Owner and Operator will repatriate the aforementioned or subpoenaed officers and crewmembers to their home country, or to port to complete their contracts at the Owner's or Operator's expense, unless otherwise agreed or ordered by a court of competent jurisdiction. Owner and Operator will not act in bad faith in carrying out these obligations.

6. The obligations set forth in paragraphs 4 and 5 are subject to all rights of each officer and crewmember as may be asserted by the officer or crewmember or by any attorney working on his behalf.

7. The United States agrees that the Owner and Operator cannot exercise complete control over the aforementioned or subpoenaed officers and crewmembers and therefore Owner's and Operator's obligations in respect to returning the aforementioned

4

or subpoenaed officers and crewmembers to the District of Delaware and ensuring the aforementioned or subpoenaed officers and crewmembers remain in the District of Delaware shall be limited to instructing them to surrender their passports to the Coast Guard Investigative Service for safe keeping and to remain in the District of Delaware, or any other agreed location, and providing them with reasonable lodging and meals and providing transportation to the place their testimony is to be given as required by their subpoenas, as set forth above.

8.    Owner and Operator agree to stipulate to the authenticity of original and/or copies of documents and things seized from the Vessel or produced by the Owner or Operator. The United States agrees that by so stipulating, Owner and Operator do not waive any objections they may have to the relevance or admissibility of the documents into evidence in any proceeding, or to the manner in which they were seized and removed, or to any other matter concerning the documents or things except their authenticity at the time of seizure. Owner and Operator further agree to facilitate and assist the United States in effective service of Grand Jury and/or trial subpoenas to records custodians employed by the Owner and Operator and who are not in the United States at the time the subpoena is issued. The Owner and Operator will instruct records custodians to cooperate with the United States in carrying out its investigation and will not act in bad faith in carrying out this obligation.

9.    The Surety Bond described in paragraph 1 shall be paid out to the United States as provided for in the Surety Bond and as follows:

a.    If the District Court renders a finding that either the Owner and/or Operator failed to undertake reasonable efforts to facilitate interviews, assist in the service

5

of Grand Jury or trial subpoenas, continue the employment and pay total wages of subpoenaed officers and crewmembers and the specified officers and crewmembers listed in paragraph 5, or provide for the return, lodging and management of subpoenaed officers and crewmembers as required by Paragraphs 4, 5, 7 and 8 then the amount of the Surety Bond shall be payable to the United States in reimbursement for actual expenses required for performance of the aforementioned obligations by the United States, as directed by the Court.

b.  If the District Court renders a finding that the Owner and/or Operator materially breach any other obligation contained in this Agreement, then the amount of the Surety Bond shall be payable to the United States, as directed by the Court.

c.  Any dispute between the United States and Owner and/or Operator regarding payment under this paragraph shall be submitted to the United States District Court for the District of Delaware.

10.    Owner, Operator, and the United States agree that the criminal and civil penalty claims of the United States against the vessel *in rem* shall attach to the Surety Bond in the same manner and to the same extent as they would to a Vessel Release Security provided pursuant to the Federal Rules of Civil Procedure, Admiralty, Maritime Claims, Supplemental Rule E (5).  In consideration of Owner's/Operator's Surety Bond, the United States agrees not to cause the arrest of the Vessel, nor the arrest, seizure or attachment of any other property belonging to or under the control or management of the Owner or Operator and not to withhold the U.S. Customs departure clearance of the

6

Vessel or any other Vessel belonging to or under the control or management of the Owner or Operator.

11.   Owner and Operator and the United States agree that Owner and Operator may petition the United States District Court for a reduction in the amount of the Surety Bond provided herein. For the purpose of any such motion the parties agree that the United States District Court for the District of Delaware has jurisdiction to hear such a motion just as if the Surety Bond had been posted pursuant to Supp. E(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims.

12.   The United States, Owner and Operator enter into this Agreement without prejudice as to all rights or defenses, none of which is to be regarded as waived except as expressly set forth above. This Agreement may be signed in duplicate originals.

Dated: December 27, 2005

VENETICO MARINE S. A.
Owner

By: George M. Chalos
FOWLER, RODRIGUEZ & CHALOS, LLP
As attorney in fact per authority received
December 27, 2005.

Dated: December 27, 2005

CHIAN SPIRIT MARITIME
ENTERPRISES, INC.
Operator

By: George M. Chalos
FOWLER, RODRIGUEZ & CHALOS, LLP
As attorney in fact per authority received
December 27, 2005.

Dated:  December____, 2005          **United States of America**

By: _____
Kristian B. Pickrell
Lieutenant, U.S. Coast Guard
U.S. Coast Guard MLC Atlantic (Lo)

# EXHIBIT F

# AMENDMENT 1 TO AGREEMENT ON SECURITY

## RECITALS

A.      This document amends the "Agreement on Security" signed on December 27, 2005 by the parties: George M. Chalos on behalf of the "Owner" and "Operator" of the M/V IRENE E. M., and by Lieutenant Kristian B. Pickrell, U.S. Coast Guard on behalf of the United States.

B.      By signature below both parties agree to modify the aforementioned Agreement on Security in paragraph number "5" by changing the date that the Owner and Operator agree to continue the employment, pay total wages, and provide lodging and meals to the aforementioned officers and crewmembers and subpoenaed officers and crewmembers from April 15, 2006 to May 15, 2006.

C.      Both parties agree that all other terms and conditions of the Agreement on Security remain in full force and effect.

D.      This Amendment 1 to the Agreement on Security may be signed in duplicate originals.

Dated: April 7, 2006

VENETICO MARINE S. A.
Owner

By: George M. Chalos
FOWLER, RODRIGUEZ & CHALOS, LLP
As attorney in fact per authority received
December 27, 2005.

Page 1 of 2

Dated: April 7, 2006

**CHIAN SPIRIT MARITIME ENTERPRISES, INC.**
**Operator**

By: George M. Chalos
FOWLER, RODRIGUEZ & CHALOS, LLP
As attorney in fact per authority received
December 27, 2005.

Dated: April___, 2006

**United States of America**

By:
Kristian B. Pickrell
Lieutenant, U.S. Coast Guard
U.S. Coast Guard MLC Atlantic (Lo)

**EXHIBIT G**

# AMENDMENT 2 TO AGREEMENT ON SECURITY

## RECITALS

A.      This document amends the "Agreement on Security" signed on December 27, 2005 by the parties:  George M. Chalos on behalf of "Owner" and "Operator" of the **M/V IRENE E.M.** and by Lieutenant Commander M. S. Antonellis, U.S. Coast Guard on behalf of the United States.

B.      By signature below both parties agree to modify the aforementioned Agreement on Security in paragraph number "5" by changing the date that the Owner and Operator agree to continue the employment, pay total wages, and provide lodging and meals to the aforementioned officers and crewmembers and subpoenaed officers and crewmembers from May 15, 2006 to June 15, 2006.

C.      Both parties agree that all other terms and conditions of the Agreement on Security remain in full force and effect.

D.      This Amendment 2 to the Agreement on Security may be signed in duplicate originals.

Dated: May 10, 2006

                                          **VENETICO MARINE S.A.**
                                          Owner

                                          By: George M. Chalos
                                          FOWLER, RODRIGUEZ & CHALOS
                                          As attorney in fact per authority received
                                          December 27, 2005.    5/10/06

Dated: May 10, 2006

CHIAN SPIRIT MARITIME
ENTERPRISES, INC.
Operator

By: George M. Chalos
FOWLER, RODRIGUEZ & CHALOS
As attorney in fact per authority received
~~December 27, 2005.~~ 5/10/06

Dated: May 10, 2006

United States of America

By:
M. S. Antonellis
Lieutenant Commander, U.S. Coast Guard
CG MLC Atlantic (Lo)

Page 2 of 2

**EXHIBIT H**

# AMENDMENT 3 TO AGREEMENT ON SECURITY

## RECITALS

A.     This document amends the "Agreement on Security" signed on December 27, 2005, and as amended by Amendment 1 and Amendment 2, by the parties: Michael G. Chalos on behalf of "Owner" and "Operator" of the M/V IRENE E.M. and by Lieutenant Kristian B. Pickrell, U.S. Coast Guard on behalf of the United States.

B.     By signature below both parties agree to modify the aforementioned Agreement on Security in paragraph number "5" by changing the date that the Owner and Operator agree to continue the employment, pay total wages, and provide lodging and meals to the aforementioned officers and crewmembers and subpoenaed officers and crewmembers from June 15, 2006 to July 15, 2006.

C.     Both parties agree that all other terms and conditions of the Agreement on Security remain in full force and effect.

D.     This Amendment 3 to the Agreement on Security may be signed in duplicate originals.


Dated: June 15, 2006

                                        VENETICO MARINE S.A.
                                        Owner

                                        By: Michael G. Chalos
                                        FOWLER, RODRIGUEZ & CHALOS
                                        As attorney in fact per authority received
                                        June 15, 2006.


Page 1of 2

Dated: June 15, 2006

**CHIAN SPIRIT MARITIME
ENTERPRISES, INC.**
**Operator**

By: Michael G. Chalos
FOWLER, RODRIGUEZ & CHALOS
As attorney in fact per authority received
June 15, 2006

Dated: June 15, 2006

**United States of America**

By: Kristian B. Pickrell
Lieutenant, U.S. Coast Guard
CG MLC Atlantic (Lo)

# EXHIBIT I



**U.S. Department of Justice**

*United States Attorney's Office*
*District of Delaware*

---

*Nemours Building*                                    *(302) 573-6277*
*1007 Orange Street, Suite 700*                *FAX (302) 573-6220*
*P.O. Box 2046*
*Wilmington, Delaware 19899-2046*

January 11, 2006

Michael Twersky, Esquire
Montgomery, McCracken, Walker & Rhodes
123 South Broad Street
Philadelphia, Pennsylvania  19109

    Re:  **Gilbert Amaguin, Felix Bersamina, Pascual Conge,**
          **Roberto Damasing, Brian Espina, Nicole Ghiocel,**
          **Mario Manzanillo, Edgaro Paje, Paul Tudor and**
          **Edgar Villano**

Dear Mr. Twersky:

    This letter is to reiterate that the above-captioned crewmen of the *Irene E M* are not subjects or targets of the Grand Jury investigation.

    Further, in return for their TOTAL and HONEST cooperation with investigators from this point forward, the United States agrees that it will not seek to prosecute them for matters related to the *Irene E M* investigation. Of course, they are subject to prosecution for perjury and/or false statement if they lie to the Grand Jury or investigators.

                    Very truly yours,

                    COLM F. CONNOLLY
                    United States Attorney

      By

                    Edmond Falgowski
                    Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that, on June 27, 2006, I arranged for a copy of the foregoing Transmittal Affidavit of Richard M. Donaldson In Support of Emergency Petition of Robert Damasing, Paul Tudor, Pascual Conge and Bryan Espina to Compel Their Immediate Release to be served by facsimile and first-class United States mail, postage prepaid upon the following individuals:

Mark Kotila, Esquire
United States Department of Justice
Environmental Crimes Section
P.O. Box 23985
L'Enfant Plaza Station
Washington, D.C. 20026-3985

Michael Chalos, Esquire
Fowler, Rodriguez & Chalos
366 Main Street
Port Washington, NY  11050

Carl Woodward, Esquire
Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein,
Five Becker Farm Road
Roseland, New Jersey 07068-1739

Bruce Pasfield, Esquire
Alston & Bird LLP
The Atlantic Building
950 F Street, N.W.
Washington, DC  20004-1404

_____
Richard M. Donaldson